UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| PARKER-HANNIFIN CORPORATION, *et al.*, | ) ) ) | Case No.: 1:07 CV 1374 |
| Plaintiffs | ) ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) ) | |
| WIX FILTRATION CORPORATION, | ) ) | |
| Defendant | ) | |

| | | |
|---|---|---|
| PARKER-HANNIFIN CORPORATION, *et al.*, | ) ) ) | Case No.: 1: 07 CV 1375 |
| Plaintiffs | ) ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) ) | |
| CHAMPION LABORATORIES, INC. | ) ) | |
| Defendant | ) | <u>ORDER</u> |


On December 11, 2009, at the conclusion of the trial in the above-captioned case, the jury

reached a verdict in favor of Plaintiffs Parker-Hannifin Corporation and Parker Intangibles LLC

(collectively, "Plaintiffs" or "Parker") and against Defendants Wix Filtration Corporation and

Champion Laboratories, Inc. (collectively, "Defendants" or "Champion") on Plaintiffs' patent

infringement claims.  Now pending before the court are the following post-trial Motions: (1)

Plaintiffs' Motion for Enhanced Damages for Defendants' Willful Infringement (ECF No. 198,

1:07CV1374; 185, 1:07CV1375); (2) Plaintiffs' Motion for Accounting, Supplemental Damages, and Prejudgment Interest (ECF No. 200, 1:07CV1374; 187, 1:07CV1375); (3) Plaintiffs' Motion to Declare this an Exceptional Case and to Award Attorney Fees and Expenses (ECF No. 202, 1:07CV1374; 189, 1:07CV1375); (4) Plaintiffs' Motion to Strike and Disregard New Declarations as Outside the Record Evidence and Submitted for Improper Purposes (ECF No. 224, 1:07CV1374; 211, 1:07CV1375); (5) Defendants' Motions Pursuant to Rule 50 for Judgment as a Matter of Law, and Alternatively, Pursuant to Rule 59 for a New Trial (ECF No. 237, 1:07CV1374; 222, 1:07CV1375); (6) Defendants' Motion for Leave to File Oversize Memorandum in Support of Motion for Judgment as a Matter of Law Pursuant to Rule 50 or for New Trial Pursuant to Rule 59 (ECF No. 238, 1:07CV1374; 223, 1:07CV1375); and (7) Defendants' Motion for Leave to File *Instanter* a Sur-Reply in Further Opposition to Plaintiffs' Post-Trial Motions (ECF No. 228, 1:07CV1374; 215, 1:07CV1375).[1]  For the reasons that follow, the court grants Plaintiffs' Motion to Award Attorney Fees and Expenses, grants in part and denies in part Plaintiffs' Motion for Accounting, Supplemental Damages, and Prejudgment Interest, grants in part and denies in part Plaintiffs' Motion to Strike, denies Defendants' Motions Pursuant to Rules 50 and 59, grants Defendants' Motion for Leave to File Oversize Memorandum in Support of Motion for Judgment as a Matter of Law Pursuant to Rule 50 or for New Trial Pursuant to Rule 59, and grants Defendants' Motion for Leave to File *Instanter* a Sur-Reply in Further Opposition to Plaintiffs' Post-Trial Motions.

## I.  BACKGROUND

A more thorough recitation of the facts and procedural history of this case can be found in

---

[1]     The remaining docket numbers, unless otherwise noted, refer to 1:07 CV 1374.

the court's Order dated November 6, 2009 (ECF No. 110).  On May 11, 2007, Parker instituted the

current action, claiming that Defendants were manufacturing and selling a fuel filter that infringed

their patent, U.S. Patent No. 5,643,446 (the "'446 Patent").  Specifically, Parker asserted in their

Complaint that Defendants' accused product infringed Claims 20, 24, and 25 of the '446 Patent.

Parker further stated that their infringement was willful.  On April 15, 2009, the court issued an

Order, construing various claim terms of the '446 Patent disputed by the parties.  (Claim

Construction Order, ECF No. 50.)  The court construed these terms as follows:

> "First [or second] end cap attached to said media" is construed as "the
> component or components fastened, joined, connected, or affixed to the
> ends of the filter media."  "Longitudinally extending annular end cap
> wall" means "ring-shaped end cap wall that extends into the central
> chamber in a direction generally parallel to the center axis of the
> filter."  "Longitudinally extending actuating projection" means "an
> element that protrudes from the surface of another element of the filter
> and that engages or actuates another mechanism or element and that
> extends in a direction generally parallel to the center axis of the filter."
> "Central portion" means "the portion centrally located in the radial
> direction."  "Annular resilient seal in circumferentially surrounding
> relation and radially outwardly spaced from said free end of said
> actuating projection" means "a ring-shaped seal with an actuating
> projection radially within the circumference."

(Claim Construction Order at 26-27.)  The court also concluded that Claim 20 was invalid.

Defendants then filed Motions for Summary Judgment, arguing the Parker's patent

infringement claim failed as a matter of law on the grounds of non-infringement and patent

invalidity.  They argued that the patent was invalid based on anticipation, indefiniteness, best mode,

and written description.  They also claimed that their product did not infringe Parker's because their

filter lacked one or more of the claimed limitations.  The court concluded that genuine issues of

material fact remained with regard to whether Defendants' filter infringed the patent. The court

rejected Defendants' anticipation argument regarding patent invalidity, as the court concluded that

they failed to give Plaintiffs proper notice that they were raising this claim.  The court also

concluded that Defendants failed to timely raise their indefiniteness argument as such an argument should have been raised during claim construction. The court also rejected their best mode argument and found that genuine issues of material fact remained regarding whether the patent was invalid based on lack of written description.

The trial commenced on December 3, 2009. At the close of Parker's case-in-chief, Defendants moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) on the issues of infringement of Claim 24 and willful infringement of Claims 24 and 25. The court denied the Motion. Defendants again moved, at the close of trial, for judgment as a matter of law on Plaintiffs' patent infringement and willful infringement claims, and their defense of patent invalidity. Parker also moved for judgment as a matter of law in their favor on these issues as well. The court denied Defendants' Motion with regard to infringement and deferred ruling on willful infringement. The jury thereafter returned a verdict in favor of Parker in all regards. They determined that Defendants' filter infringed Claims 24 and 25 of the '446 Patent, that this infringement was willful, and that Claims 24 and 25 are not invalid. The court thereafter denied Defendants' deferred motion regarding willfulness.

Plaintiffs filed various post-trial motions, including a Motion for Permanent Injunction (ECF No. 196), Motion for Enhanced Damages for Defendants' Willful Infringement (ECF No. 198), Motion for Accounting, Supplemental Damages, and Prejudgment Interest (ECF No. 200), and Motion to Declare this an Exceptional Case and to Award Attorney Fees and Expenses (ECF No. 202). Defendants indicated to the court that they intended to file a Rule 50(b) Motion. The court granted Plaintiffs' Motion for Permanent Injunction and deferred ruling on the remaining post-trial Motions until after ruling on Defendants' anticipated Rule 50(b) Motion. The court reasoned that many of the issues raised in Plaintiff's Motions would be moot upon a favorable ruling on Defendants' Rule 50(b) Motion.

On May 20, 2010, Defendants filed a Motion Pursuant to Rule 50 for Judgment as a Matter of Law, and Alternatively, Pursuant to Rule 59 for a New Trial (ECF No. 237).  Defendants seek judgment as a matter of law on the issues of patent infringement, willful infringement and patent invalidity.  In the alternative, they move for a new trial on these issues.  They also request that the court amend the Order denying their Motion for Summary Judgment (ECF No. 110) in certain respects.

## II. DEFENDANTS' MOTIONS PURSUANT TO RULE 50 FOR JUDGMENT AS A MATTER OF LAW, AND ALTERNATIVELY, PURSUANT TO RULE 59 FOR A NEW TRIAL

### A.  Standards

#### 1.  Federal Rule of Civil Procedure 50(b)

Under Federal Rule of Civil Procedure 50(b):

(b) Renewing the Motion After Trial; Alternative Motion for a New Trial. If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 10 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 10 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.  In ruling on the renewed motion, the court may:

(1) allow judgment on the verdict, if the jury returned a verdict;

(2) order a new trial; or

(3) direct the entry of judgment as a matter of law.

As the Sixth Circuit recognized in *White v. Burlington N. & Santa Fe Ry.Co.,* 364 F.3d 789, 794 (6th Cir. 2004), where that court affirmed the district court's denial of a motion for judgment as a matter of law, "[t]he inquiry for resolving a motion for judgment as a matter of law pursuant to Rule 50 is the same as the inquiry for resolving a motion for summary judgment pursuant to Rule 56."  A district court must "review all of the evidence in the record in the light most favorable to the

- 5 -

nonmoving party and determine whether there was a genuine issue of material fact for the jury." *Id.*

A court must affirm the jury verdict unless there was "no legally sufficient evidentiary basis for a reasonable jury to find for [the prevailing] party." *Id.* Significantly, the *White* court recognized that a court must "draw all reasonable inferences in favor of the prevailing party, and not make any credibility determinations or weigh the evidence." *Id.* A district court must therefore "disregard all evidence favorable to the moving party that the jury is not required to believe." (*Id.* at 794-95) (quotations omitted).

### 2.  Federal Rule of Civil Procedure 59(a)(1)(A)

As the Sixth Circuit recognized in *Mike's Train House, Inc. v. Lionel, L.L.C.,* 472 F.3d 398, 405 (6th Cir. 2006), where the court affirmed the district court's denial of a motion for a new trial, Federal Rule of Civil Procedure 59(a) provides that, "after a jury trial a court may grant a new trial 'for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.'" In *Mike's Train House,* the court explained that Rule 59(a) has been interpreted to require a new trial: only "when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Id.*

### 3.  Federal Rule of Civil Procedure 59(e)

Pursuant to Rule 59(e), a court may "alter or amend its judgment upon motion by a party." Fed. R. Civ. P. 59(e). A motion to alter or amend judgment is generally appropriate where it seeks reconsideration of issues encompassed in a district court's decision on the merits. *White v. N. H.*

- 6 -

*Dep't of Employment Sec.,* 455 U.S. 445, 451 (1982).  Rule 59(e) motions may be granted in the following limited instances: (1) clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) to prevent manifest injustice.  *See Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

### B.  Application

Defendants maintain that they are entitled to judgment as a matter of law on several issues in the case.  In the alternative, they claim that they should be granted a new trial.  They also maintain that the court's Summary Judgment Order was erroneous in several respects, and they therefore seek amendment of that Order.  They contend that they are entitled to this relief based on the following grounds: (1) their filter did not infringe the '446 Patent because the actuating projection is not "stationary" relative to the media or annular end cap wall and because it has a separate end cap and tap plate; (2) their filter does not infringe the preamble limitation of Claims 24 and 25; (3) any purported infringement was not willful because there was not an "objectively high likelihood" that their filter infringed a valid patent; (4) the court improperly permitted the jury to consider arguments regarding Defendants' lack of reliance on an opinion of counsel; (5) the court improperly prohibited Defendants from showing to the jury Plaintiffs' commercial embodiment to defend against Plaintiffs' claim that Defendants copied their filter; (6) the '446 Patent is invalid because it fails to comply with the best mode and written description requirements; and (7) Claims 24 and 25 of the '446 Patent are invalid as obvious in light of the Brown and Takashi references. The court discusses each issue in turn below.

### 1.  Infringement of Claim Limitations "Stationary" and "End Cap"

### a.  "Stationary Limitation"

Defendants contend that the evidence at trial established that their product did not meet the stationary limitation of Claims 24 and 25, and therefore, they are entitled to judgment as a matter of law or, in the alternative, a new trial.  The pertinent limitation in Claim 24 reads: "actuating projection [that is] stationary relative to said media."  Defendants maintain that Plaintiffs' expert, Dr. Charles A. Garris ("Dr. Garris"), admitted that their filter did not meet this limitation as he stated that there can be relative movement between the filter cartridge and the actuating projection.  Dr. Garris explained, however, that during normal operating conditions of the filter, the actuating projection is stationary relative to the media.  (Trial Tr. at 742.)  He further explained that "you can always create abnormal conditions" that will result in some movement, but that "when [the inventors] use the word stationary, they meant stationary . . . in an actual operating situation."  (*Id.*)  Defendants contend that the distinction between usual operating conditions and abnormal conditions is legally irrelevant and that either condition can demonstrate noninfringement.   However, Defendants fail to point to and the court fails to find case law supporting the proposition that a product's use under abnormal conditions is relevant to the issue of infringement.[2]

Instead, Plaintiffs cite *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1344 (Fed. Cir. 2001), in which the court reversed the district court's grant of summary judgment in favor of the defendant on the issue of infringement.  The defendant-accused argued that its product did not infringe the plaintiff's product under certain circumstances; however, the plaintiff presented

---

[2]      While Defendants maintain that William Watson, one of Champion's engineers, established that movement within the filter could result from common dynamic situations such as rough road conditions (Trial Tr. at 1073), this testimony conflicted with the testimony of Dr. Garris, who opined that movement would not result under normal operating conditions.  For the purpose of this Motion, the court reviews all evidence in favor of Plaintiffs and "disregards all evidence favorable to the moving party that the jury is not required to believe."  *See White*, 364 F.3d at 794-95.

evidence that the product did infringe under "normal operating conditions." *Id.* at 1343. The Federal Circuit found that a genuine issue of material fact remained, stating that "[w]e agree that tests of an accused device under unusual conditions are not necessarily relevant to an infringement analysis" and that "an accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may be capable of non-infringing modes of operation." *Id.* In the instant case, Dr. Garris's opinion demonstrates that Defendants' device is reasonably capable of satisfying the "stationary" limitation as the actuating projection and filter media do not move relative to one another during normal operating conditions. As such, the jury could have properly used this testimony to support their finding of infringement of this claim limitation.

Defendants likewise argue that this movement negates Plaintiffs' claim that the accused product infringes this limitation under the doctrine of equivalents. This doctrine "allows the patentee to claim those insubstantial alterations that were captured in drafting the original patent claim but which could be created through trivial changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2000)  A party seeking to establish infringement under the doctrine of equivalents may do so by satisfying the "function-way-result" test, in which the party shows that the accused product performs substantially the same function, in substantially the same way, to achieve substantially the same result. *Abott Labs. v. Sandoz, Inc.*, 556 F.3d 1282, 1297 (Fed. Cir. 2007). Defendants maintain that this doctrine cannot be used, as Plaintiffs seek to here, to effectively eliminate a limitation. In other words, they argue that because their product's actuating projection is not stationary relative to the filter media, then their product cannot meet this limitation through the doctrine of equivalents as it would effectively eliminate the stationary requirement. The court, however, disagrees. As discussed above, there is evidence in the record

tending to show that any purported movement occurs under unusual conditions, and that a finding of infringement through the doctrine of equivalents would not effectively read out this provision.

Furthermore, Dr. Garris testified that in addition to meeting the requirements of literal infringement, the accused product also met the requirements of the doctrine of equivalents with regard to "stationary" limitation.  He found that Defendants' product meets the function-way-result test, as the function of this limitation is for the actuating projection to remain stationary relative to the media such that it will properly open the necessary valve.  (Trial Tr. at 664-65.)  He maintains that the function of the actuating projection being stationary relative to the media is the same in Defendants' filter, despite the fact that "you can detect some minuscule motion in [Defendants' filter]."  (Trial Tr. at 665.)  He then stated that the way it opens the valve and the result of the valve opening is also the same.  (*Id.*)  This testimony demonstrates that Defendants' filter meets the function-way-result test, supporting the jury's conclusion that infringement was established under the doctrine of equivalents as well.

Defendants next argue that no reasonable jury could have found that Parker demonstrated that their product infringed the stationary limitation in Claim 25, which is that the "actuating projection [is] stationary relative to said annular end cap wall."  Defendants state that Plaintiffs' theory with regard to the end cap on their device is that it consists of multiple components, including the metal end cap, grommet, and the black plastic part.  They contend that this theory runs contrary to the court's construction of the claims because the court concluded that an end cap could not include a tap plate.  They argue that their expert along with their design engineer testified that the black plastic part was a tap plate, and therefore could not be part of the end cap wall that is stationary relative to the actuating projection.  However, Plaintiffs presented evidence to the

- 10 -

contrary that the black plastic part was not a tap plate as it lacked a central threaded opening, as the term is defined in the '446 Patent and as the term is known to a person skilled in the art.  (Trial Tr. 616-19.)  Furthermore, Dr. Garris opined that the actuating projection was stationary relative to the end cap wall in Defendants' filter because the actuating projection and annular end cap wall are all part of one black plastic piece that is clearly stationary relative to each other.  (Trial Tr. at 621-22.)

Defendants also contend that the black plastic part itself could not have been part of the first end cap because it was not "attached" to the media. The court disagrees.  The court found that the end cap could consist of multiple components, and under Plaintiffs' theory of infringement with regard to Claim 25, which is supported by the testimony of Dr. Garris, the black plastic part is merely one component of the multi-component end cap that all together is attached to the media. (Trial Tr. at 607-08.)  Dr. Garris explained as follows:

> [T]he Court has stated that an end cap can be a component or multiple components that are attached, affixed or joined, to the end of the filter media and this combination, as I showed you, is a – is a rigidly connected group of three elements that are actually glued to the end of the filter media.  So indeed it meets the Court's construction of an end cap, very clearly to me it does.

(Trial Tr. at 739-40.)  A reasonable jury could have determined based on this expert opinion, that this claim is satisfied.

As Defendants have failed to demonstrate that the jury lacked evidence to support its findings with regard to the stationary and end cap limitations, the court finds that Defendants are not entitled to judgment as a matter of law.  Defendants are likewise not entitled to a new trial on this basis.

b.  End Cap Limitation

- 11 -

Defendants further argue that they are entitled to a new trial because the court failed to instruct the jury that an end cap cannot be a tap plate despite concluding as such in the Claim Construction Order. They maintain that they were prejudiced by this omission, and they are therefore entitled to a new trial. The court, however, precluded this statement because it was not part of the construction of any term; instead, it was part of the rationale in reaching a construction of the term end cap. The parties agreed, on the record, that the claim construction process and the court's reasoning relative to this construction would not be referenced to the jury. (Trial Tr. at 14.) Accordingly, the court properly precluded this reference, and Defendants are not entitled to a new trial on this basis.

### 2.  Infringement of Preamble Limitation

Defendants contend that they are entitled to judgment as a matter of law, or in the alternative, a new trial because their filter does not meet the preamble limitation ("a filter for mounting to a filter head including a nipple portion having a valve element therein"). They contend that they only made and sold replaceable filter elements, not filter heads, and that Plaintiffs have failed to offer evidence that Defendants made or sold a "filter head with a nipple portion having a valve element therein." Defendants, however, appear to be reading out the first portion of the limitation, which recites "a filter for mounting . . ." Dr. Garris testified that their filter met this limitation for both Claims 24 and 25 as it was a filter for mounting to a filter head including a nipple portion with a valve element therein. (Trial Tr. at 600, 629.) Defendants, on the other hand, point to no evidence in the record disputing this testimony. Therefore, the jury's verdict is supported by evidence and Defendants are not entitled to judgment as a matter of law or a new trial.

### 3.  Willful Infringement

- 12 -

The jury found in favor of Plaintiffs on their claim that Defendants willfully infringed the '446 Patent.  The Federal Circuit in *In re Seagate Tech., LLC*, 497 F.3d 1360,1371 (Fed. Cir. 2007), set forth the requirements to establish willful infringement.  The court stated as follows:

> Accordingly, to establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. . . . The state of mind of the accused infringer is not relevant to this objective inquiry. If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer.

*In re Seagate*, 497 F.3d at 1371 (citation omitted).  Plaintiffs are required to prove willful infringement by clear and convincing evidence, which is determined based on the totality of the circumstances.  *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1311 (Fed. Cir. 2007).

Defendants maintain that the court should grant judgment as a matter of law in their favor on the issue of willful infringement because Plaintiffs failed to satisfy their burden to prove this claim by clear and convincing evidence.  Plaintiffs, on the other hand, contend that sufficient evidence supports the jury's finding of willful infringement.  They further argue that Defendants improperly raised grounds in their Rule 50(b) Motion not raised before the court in their Rule 50(a) Motion.  The court addresses these issues below.

### a. *Seagate* Prong 1: Objectively High Likelihood of Infringement of a Valid Patent

Under this prong, "both legitimate defenses to infringement claims and credible invalidity arguments demonstrate a lack of objectively high likelihood that a party took actions constituting infringement of a valid patent." *Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 260 F. App'x 284, 291 (Fed. Cir. 2008).   Defendants argue that they maintained legitimate defenses in terms of

infringement and invalidity throughout this case. To support this contention, they argue that the parties disputed in good faith the proper interpretation of claim terms, such as "first end cap" and "attached." They maintain that they offered a proper construction of these terms and if the court had adopted their proposed construction, they would have easily demonstrated non-infringement. In response, Plaintiffs first argue that Defendants failed to preserve this issue as they did not assert this issue as a ground supporting their Rule 50(a) Motion. Based on the record, it appears that Defendants did not raise this argument during the trial, and they, therefore, failed to preserve it for the instant Motion. *See* Advisory Comm. Notes to 2006 Amendments, Fed. R. Civ. P 50 ("Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion.")

Even if they had properly preserved this argument, the court is not persuaded that this basis would warrant disturbing the jury's verdict. In *Cohesive Techs., Inc. v. Waters Corp*, 543 F.3d 1351, 1374 (Fed. Cir. 2008), the Federal Circuit upheld the district court's finding of no willful infringement where a disputed claim term could have reasonably been construed differently and in a manner under which the defendant's product would not have infringed. In the instant case, however, the court rejected Defendants' constructions as a matter of law. Defendants argued that the "first end cap" should be limited to a single component piece and that "attached" should be construed as "bonded to and sealing." The court found that an end cap could be a multi-component structure based on the unrefuted statement of Plaintiffs' expert, Dr. Garris, and rejected that the term "attached" required some type of bonding or adhesive as the court concluded that this narrow construction lacked support from the Patent. Furthermore, Plaintiffs maintain that Defendants' filter would nonetheless infringe Claim 24 under either construction as Dr. Garris opined that even if the

end cap were limited to a single component and were required to be bonded to the media, their filter met these requirements. (Trial Tr. at 643.)  Therefore, the court rejects that this was a legitimate non-infringement defense.

Defendants also argue that because the court found in the Summary Judgment Order that a reasonable jury could find for no infringement, Plaintiffs cannot establish an objectively high likelihood of infringement. Specifically, they argue that the court concluded that there were factual disputes regarding the issue of whether the black plastic portion of their device was a tap plate and whether their device fulfilled the "stationary" requirement.  The court does not find this argument well-taken. Defendants sought summary judgment in their favor, and the court merely found that Plaintiffs provided sufficient evidence to give rise to a genuine issue of material fact with regard to its claims.  This finding does not demonstrate that Defendants, at the time of creating their filter, acted despite an objectively high likelihood of infringing the '446 Patent.

Defendants next contend that they presented credible invalidity arguments demonstrating that any infringement was not willful.  The first invalidity argument they maintain was credible was their written description defense.  Plaintiffs again argue that they failed to preserve this ground as they withdrew this defense prior to submission to the jury and it was therefore not raised in their preverdict motion. (Trial Tr. at 1334.) Even if Defendants had preserved this argument, their written description defense was not credible.  They lacked any expert testimony on this issue, as the court precluded their expert, Mr. Mahon, from testifying in this regard, as he admitted to not reading the prosecution history of the patent.  They instead sought to use one exhibit, a 1999 drawing of an embodiment of the patent, to cross-examine two of Plaintiffs' witnesses.  The court precluded the use of the exhibit with one of the witnesses and stated that this evidence alone could not possibly

- 15 -

establish their written description defense. (Trial Tr. at 1322.)  Thus, the court rejects that they presented a credible written description defense.

Their second argument in this regard is that their obviousness defense was sufficiently credible as the court rejected Plaintiffs' motion for judgment as a matter of law on this issue.  The court again disagrees that merely allowing the issue to be considered by the jury demonstrates that they presented a credible defense.  Accordingly, the court rejects Defendants' contention that Plaintiffs cannot meet the first prong of *Seagate* based on their arguments.

### b. *Seagate* Prong 2: Objectively-Defined Risk Known or Should Have Been Known to Defendants

With regard to the second prong, Plaintiffs argued before the jury that this prong was fulfilled based on evidence that Defendants copied their product, lacked written policies on how to avoid infringement, and failed to present evidence of advice of counsel.  They maintained that this evidence demonstrated that Defendants should have known of the objectively-defined risk of infringing the '446 Patent.  Defendants, on the other hand, argue that there was substantial evidence demonstrating that they attempted to avoid, and believed in good faith that they had avoided, Plaintiffs' patents.  This evidence includes that Parker did not mark their filter with the '446 Patent (Trial Tr. at 491); Champion's engineer, William Watson ("Mr. Watson"), understood technical aspects of the patents that he reviewed and designed their fuel filter to avoid the '446 Patent (Trial Tr. at 949); and John Gaither ("Mr. Gaither"), the Vice President of Engineering and Quality, independently inspected the '446 Patent and filter and concluded that there was no infringement (Trial Tr. at 1014-1015).

They further argue that this case is analogous to *Procter & Gamble, Co. v. McNeil-PPC, Inc.*, 615 F. Supp. 2d 832 (W.D. Wis. 2009).  In that case, the court stated that the evidence of willfulness

was as follows: "(1) defendant knew about the [] patent before launching [its product]; (2) defendant tested prototypes of [its product] strips against [plaintiff's patented product]; and (3) defendant learned the amount of hydrogen peroxide in plaintiff's [product]." *Id.* at 856.  The court concluded that "[n]one of these facts establish the type of behavior sufficient to find willful infringement, whether they are considered individually or in combination." *Id.*

The court disagrees that the evidence presented at trial was limited to the same evidence as in *Procter & Gamble*.  Instead, Plaintiffs did present evidence for which a reasonable jury could conclude that Defendants in fact copied Plaintiffs' product and did not believe in good faith that they avoided the '446 patent despite testimony to the contrary.  With regard to copying, it is undisputed that Defendants were aware of the '446 Patent at the time they began creating their filter and created their filter to take GM's business away from Parker.  (Trial Tr. at 943-44, 1041-42.)  They further admitted to creating drawings of Parker's filters and using drawings that they had from Parker of their patented filter to create their own.  (Trial Tr. at 862, 864-65, 1018, 1084-85.)  They also copied the size and geometry of their filter.  (Trial Tr. at 864-65.) Defendants contend that these elements are not covered in the patent and that they made several changes to the filter in an effort to design around the patent.  However, a jury could have used all of the aforementioned evidence, as well as the fact that they found Defendants' product to directly infringe the patent, to reasonably infer that Champion copied Parker's filter.

Defendants maintain that they demonstrated, through the testimony of their engineer and their Vice President, that they believed in good faith that they avoided the '446 Patent.  Watson and Gaither both stated that they have significant engineering experience and both concluded that they believed their product did not infringe.  However, both witnesses admitted to lacking any training

- 17 -

in patent law.  (Trial Tr. at 1026, 1086.)  Furthermore, they failed to present evidence that they relied on the opinion of any person trained in patent law who found their product not to infringe.  A jury could have reasonably concluded that Defendants did not act in good faith in trying to avoid the patent.

Lastly, Defendants make much of the fact that the court, in denying their Rule 50(a) Motion on willfulness, stated that it was "a very close call."  The court was merely noting that Plaintiffs bear a high burden in demonstrating willful infringement and that the issue of willful infringement is a close call, not that the issues of noninfringement or validity were "a very close call."  There is nothing inconsistent with this statement and the jury's finding of willful infringement.  Furthermore, the court maintains that the issue of willful infringement in this case is still a close call as there is evidence tending to establish and to negate this claim; however, it is not the role of this court to weigh evidence and make credibility determinations.  Instead, the jury acted within the bounds of reasonableness in concluding that Defendants willfully infringed the patent.  For these reasons, the court finds that judgment as a matter of law is not proper on this ground.

### 4.  Reliance on an Opinion of Counsel

Defendants contend that they are entitled to a new trial on the issue of willfulness because they maintain that Parker was improperly permitted to argue and the jury improperly permitted to consider Defendants' lack of reliance on opinion of counsel with regard to the issue of willfulness. Defendants, in a Motion *in Limine* (ECF No. 83), requested that the court prevent Plaintiffs from offering evidence, testimony, or argument pertaining to the fact that their defense against willfulness did not rely on an opinion of counsel.  Defendants had indeed secured an opinion of counsel prior to designing their product, but elected not to present this evidence at trial and to maintain their

attorney-client privilege.  The court denied their Motion, concluding based on Federal Circuit case law, that while lack of opinion of counsel does not present an adverse inference or presumption that the opinion would have been unfavorable, that it was nonetheless proper to instruct the jury that they may consider their failure to present a legal opinion as simply one factor in assessing whether any infringement was willful.

In reaching this conclusion, the court relied on *Broadcom v. Qualcomm,* 543 F.3d 683, 698 (Fed. Cir. 2004), in which the Federal Circuit upheld a jury instruction that read as follows:

> In considering whether [the defendant] acted in good faith, you should consider all the circumstances, including whether or not [the defendant] obtained and followed the advice of a competent lawyer with regard to infringement. The absence of a lawyer's opinion, by itself, is insufficient to support a finding of willfulness, and you may not assume that merely because a party did not obtain an opinion of counsel, the opinion would have been unfavorable. However, you may consider whether [the defendant] sought a legal opinion as one factor in assessing whether, under the totality of the circumstances, any infringement by [the defendant] was willful.

The court reasoned that while there is no duty to procure or offer an opinion of counsel, that evidence, along with other factors, is relevant to the issue of whether the accused knew or should have known of the infringement.  *Id.* at 699.  The Federal Circuit further found that "[i]t would be manifestly unfair to allow opinion-of-counsel evidence to serve an exculpatory function . . . and yet not permit patentees to identify failures to procure such advice as circumstantial evidence of intent to infringe."  *Id.*

The court, in the instant case, concluded that although *Broadcom* involved a failure to procure an opinion of counsel as opposed to this case which involved Defendants' refusal to produce the opinion they procured, the reasoning of *Broadcom* remained applicable.  The court concluded that Defendants could not seek to insulate themselves from the jury instruction regarding opinion

of counsel based on their tactical decision not to produce the opinion.  Therefore, the following jury instruction was included:

> In making the determination as to willfulness, you must consider the totality of the circumstances. The totality of the circumstances comprises a number of factors, which include, but are not limited to, whether Champion intentionally copied the claimed invention or a product covered by Parker's patent and whether Champion presented a substantial defense to infringement. **You may also consider whether Champion presented evidence of advice of a competent lawyer with regard to infringement. The absence of a lawyer's opinion, by itself, is insufficient to support a finding of willfulness, and you may not assume that merely because a party did not present an opinion of counsel, the opinion would have been unfavorable. However, although Champion is under no affirmative duty to seek an opinion of counsel or present such an opinion regarding infringement, you may consider a failure to present a legal opinion as one factor in assessing whether, under the totality of the circumstances, any infringement was willful.**

(Jury Instructions at 40, ECF No. 179, emphasis added.)  The court concludes, based on *Broadcom* and for the reasons stated on the record, that no error was committed in this regard.

Defendants argue that the jury verdict should be set aside based on Parker's statement in closing argument as follows:

> Here are some of the points we believe should be considered under the totality of circumstances.
>
> Champion has no written policies setting forth guidelines on how to avoid infringement. This was admitted by Mr. Watson, that he wasn't aware of such policy.
>
> Champion has not presented evidence of advice of a lawyer with regard to infringement, and has failed to present a legal opinion as a defense to Parker's claim of willful infringement.
>
> You will see mention of this in the jury instruction with regard to willful infringement. I ask you to pay careful attention to it. It will show in fact this factor weighs against Champion and in fact you should conclude willful infringement.

- 20 -

(Trial Tr. at 1439.)  Defendants argue that Plaintiffs improperly argued that their lack of opinion of counsel created a presumption that the opinion was or would have been negative.  However, Plaintiffs did not make such an argument.  They merely argued that the advice of counsel is one factor for consideration and the fact that they failed to present any evidence weighs against them, not that there is any presumption in the law that the opinion would have been negative. Furthermore, the court's instruction made clear that they were not permitted to presume that the opinion would  have been negative, only that it was one factor among many in their consideration.

Accordingly, the court rejects that Parker or the court committed any error in this regard. Therefore, the court finds that Defendants are not entitled to a new trial on the issue of willfulness.

<u>5.  Preclusion of Parker's Commercial Embodiment</u>

Defendants also maintain that they are entitled to a new trial on the basis that the court improperly prevented them from presenting Parker's filter to the jury.  They point out that Parker's central argument with regard to willful infringement was that Defendants copied their design.  They argue that Parker's filter was necessary to show that there were substantial differences between the two filters, negating the claim that they had copied Parker's design.  Defendants cite to two portions of the trial in which they were purportedly prohibited from defending itself at trial.  They first cite to an objection by Plaintiffs' counsel during their opening statement.  Counsel for Defendants was describing Champion's filter and its contents and then began to make a statement with regard to Parker's filter that differed from their own.  Plaintiffs' counsel objected and the following discussion took place at sidebar:

> [Plaintiffs' counsel]: Federal Circuit case law is exceptionally clear
> that you do not compare our product against their product in an

infringement analysis.  The correct comparison is a claim against their product. It's very improper, and I can cite a lot of case law on that.

[Defendants' counsel]: I was describing how their filter works.

[Plaintiffs' counsel]: He's not -- he's saying ours does this. He did it before when he's showing the size.  Now he's doing it with the holes.

THE COURT: Yeah, try to --

[Defendants' counsel]: I'll move on. I'll move on.

THE COURT: Okay.

(Trial Tr. at 319.) The transcript indicates that Defendants' counsel did not make clear that its arguments were directed to the issue of copying.  Instead, it appears that he was attempting to distinguish the differences between how their filter operates in comparison to Plaintiffs' filter, which relates to the issue of non-infringement as opposed to copying.  It is well-settled that "it is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process; the only proper comparison is with the claims of the patent." *Zenith Labs. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994) (citing *Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985)).

Defendants also argue that they were prevented from comparing their filter to Parker's filter during the cross-examination of Plaintiffs' expert, Dr. Garris.  Defendants' counsel was questioning Dr. Garris about movement in their product, which related to the issue of whether the accused product met the "stationary" limitation of the '446 Patent.  Dr. Garris responded that "[t]here is a very slight amount of movement . . . " (Trial Tr. at 708.)  Defendants' counsel then inquired, "And then in Parker's filter, which is Plaintiffs' Exhibit 214, you don't hear any movement, do you?" (Trial Tr. at 709.)  Plaintiffs then objected to the question, arguing that the question called for an improper comparison of Defendants' product to a commercial embodiment of Plaintiffs' filter.

- 22 -

Again, the transcript indicates that the court properly excluded reference to their commercial embodiment as Defendants' counsel was questioning the witness with regard to non-infringement as it related to the "stationary" claim limitation.  There is no indication from the transcript that the question related to the issue of copying, particularly as Defendants' counsel continued asking Dr. Garris questions regarding whether the accused product met the stationary limitation.

Because the court properly precluded reference to Plaintiffs' commercial embodiment in those instances and Defendants fail to identify any instance where they were precluded from introducing this evidence with regard to copying, the court concludes that Defendants are not entitled to a new trial on this ground.

### 6.  Patent Invalidity: Best Mode and Written Description Requirements

Defendants maintain that the court committed various errors with regard to their patent invalidity defenses regarding lack of best mode and written description requirements.  They request that the court amend the Summary Judgment Order pursuant to Rule 59(e) as the decision includes a clear error of law in its best mode analysis.  Defendants, in their Motion for Summary Judgment of Patent Invalidity (ECF No. 58), argued that the '446 Patent was invalid because it failed to comply with the best mode requirement (35 U.S.C. § 112, ¶ 2).  They maintained that Plaintiffs failed to disclose that the filter media known as Aquabloc was the inventor's preferred filter media for its fuel filter.  The court rejected this argument on two grounds, concluding first that they were not required to make this disclosure because the purpose of the invention was not to disclose a new type of filter media.  Second, the court noted that they were not required to disclose Aquabloc based on the undisputed testimony of Dr. Garris.  He opined that the type of filter media used depends on various factors, and there is no single type of media that is always appropriate.  He further explained that one who is skilled in the art could determine the appropriate filter to be used.

Defendants argue that the Federal Circuit's recent decision in *Ajinomoto Co., Inc. v. ITC*, 597 F.3d 1267, 1274 (Fed. Cir. 2010), demonstrates that the court committed a clear error of law.  In *Ajinomoto*, the Federal Circuit made clear that the best mode requirement "is not limited . . . to vague 'innovative aspects' or 'inventive features of the invention.'" Instead, "an inventor must disclose the preferred embodiment of his invention as well as preferences that materially affect the properties of the invention." *Id.* at 1272-73.  Based on this case, it might appear that the court improperly rejected Defendants' best mode argument on the basis that the filter media was not the purpose or the innovative feature of the '446 Patent.

However, the court also found that based on the testimony of Dr. Garris, there is no single type of media that would always be appropriate and that this determination would depend on various factors, which could be made by a person of ordinary skill in the art.  As such, the court reasoned that Defendants' best mode defense failed as a matter of law.  This finding comports with Federal Circuit case law, as the court in *Young Dental Mfg. Co. v. Q3 Special Prods., Inc.*, 112 F.3d 1137, 1144-45 (Fed. Cir. 1997), recognized that there was no best mode violation where the patent did not disclose a particular grade of plastic used in operating the product, as such a selection "would have been readily apparent to one of skill in the art."  Therefore, Defendants fail to persuade the court that it committed a clear error of law in this regard.

Defendants also argue that the court precluded them from asserting their defense that the patent was invalid because it failed to fulfill the written description requirement.  Their written description defense was based on their contention that the '446 Patent is written to include a tap plate-less filter, but that the inventors did not have in their possession at the time of filing a tap plate-less filter.  They argue that Mr. Jensen, one of the inventors of the patent, when shown Joint Exhibit 17, a 1999 embodiment of the patent that depicted a one piece tap plate-less filter, admitted that he

did not conceive of a tap plate-less filter until 1999, after the patent was issued.  They maintain that when counsel for Defendants sought to cross-examine Plaintiffs' expert with regard to this Joint Exhibit and its effect on the written description requirement, the court unfairly prohibited him from doing so.

However, Mr. Jensen never indicated that he did not conceive of a tap plate-less filter until 1999; instead, he stated that the drawing depicted in Joint Exhibit 17 was "put together" in 1999. (Trial Tr. at 535.)  Furthermore, the court did not improperly preclude Defendants from cross-examining Plaintiffs' expert through the use of this exhibit.  The court sustained Plaintiffs' objection that this Joint Exhibit is irrelevant to the written description requirement and reasoned that this requirement could not have been violated merely because one embodiment was not made.  (Trial Tr. at 1322.)  Defendants have failed to direct the court to case law to the contrary.  Additionally, Defendants point to no other evidence that they presented at trial to support this defense.  They lacked any expert testimony on this issue and sought merely to present this claim through the cross-examination of two of Plaintiffs' witnesses with the use of one embodiment.  Even if the court improperly precluded this embodiment, their lack of evidence on this issue negates any claim of prejudice.  Accordingly, the court rejects that Defendants are entitled to a new trial on this basis.

### 7.  Patent Invalidity: Obviousness

Defendants contend that they are entitled to judgment as a matter of law or a new trial on the issue of patent invalidity based on obviousness.  They maintain that the combination of the Brown and Takashi References that were published prior to the filing of the '446 Patent render it invalid as obvious. The obviousness inquiry provides that a patent is invalid where it would have been obvious to one of ordinary skill in the art based on prior art.  *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1359 (Fed. Cir. 2007).  To make this determination, one looks to "the

scope and content of the prior art, the differences between the prior art and the claimed invention, the level of ordinary skill in the art, and any relevant secondary considerations, such as commercial success, long-felt need, and the failure of others." *Id.*  In providing obviousness, "the burden falls on the patent challenger to show by clear and convincing evidence that a person of ordinary skill in the art would have had reason to attempt to make the composition or device." *Id.* at 1360.  The Federal Circuit has further established that  "[a] showing of obviousness requires a motivation or suggestion to combine or modify prior art references, coupled with a reasonable expectation of success . . ." *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1354 (Fed Cir. 2003).

In the instant case, the court looks to the evidence presented at trial, if any, that supports Plaintiffs' claim that the patent is valid, and reviews this evidence in a light most favorable to Plaintiffs.  Dr. Garris testified that neither the Brown nor the Takashi reference[3] include "a filter for mounting to a filter head including a nipple portion having a valve element therein," which is the limitation recited in the preamble of the '446 Patent.  (Trial Tr. at 1284, 1297.)  He also stated that the Takashi reference lacked a "central portion" as recited in the '446 Patent  (Trial Tr. at 1300.) He further maintained that the Brown reference lacked an "actuating projection." (Trial Tr. at 1285-88.)  With regard to Defendants' contention that combining the two references renders the patent obvious, Dr. Garris opined that there was no reason to combine these two references, one which is an oil filter and the other a water filter, as the purpose of the two references are so different that a person of ordinary skill in the art would not combine the two references.  (Trial Tr. 1302-03.)  He explained as follows:

---

[3]      The court found Defendants' expert, Mr. Mahon, incompetent to testify regarding the Takashi reference because he admitted to never reading it.

> One of ordinary skill in the art would not look at a lubricating filter [Brown reference] that is trying to have a dual bypass lubricating system and then look at a household water filter [Takashi reference] that is trying to enable the changing of filters without shutting off the water, and then all of a sudden come up with the '446 invention. I mean, it just couldn't - it wouldn't be logical for that to happen.

(*Id.*)  He likewise claimed that a person of ordinary skill in the art would not combine them as there would be no reasonable expectation of success.  (*Id.*)

This evidence, therefore, supports the jury's verdict as it shows that there were differences between the prior art and the '446 Patent and that a person of ordinary skill in the art would not have combined these references as there was reasonable expectation that such a combination would not have been successful. While the parties also dispute the evidence presented with regard to nonobviousness, the court needs not reach this issue as there is sufficient evidence for which a jury could find that Defendants did not prove obviousness by clear and convincing evidence.  Thus, Defendants are not entitled to judgment as a matter of law on the issue of obviousness.

Defendants also request a new trial on this issue because they claim that the court improperly permitted Plaintiffs to argue that the preamble was a limitation the day before the start of trial, which prevented them from establishing obviousness.  The court indeed denied their pre-trial Motion in *Limine* filed one month prior to trial. Plaintiffs, however, argue that they informed Defendants that they were pursuing the preamble as a claim limitation early on in the trial and that they effectively had notice that it would be an issue at trial.  Furthermore, this issue did not prejudice Defendants as Dr. Garris identified other limitations missing in both references. Accordingly, the court finds that they are also not entitled to a new trial on this basis.

### III.  PLAINTIFFS' MOTION FOR ENHANCED DAMAGES FOR DEFENDANTS' WILLFUL INFRINGEMENT

Plaintiffs request that the court award them enhanced damages for Defendants' willful

- 27 -

infringement.  They request that the court treble the jury's award of $6,535,606.  Under 35 U.S.C.

§ 284, a court, in its discretion, may increase damage awards up to three times the amount found by

a jury.  The Federal Circuit in *Transclean Corp. v. Bridgewood Servs.*, 290 F.3d 1364, 1377-78 (Fed.

Cir. 2002) explained this determination as follows:

> Enhancement of damages under 35 U.S.C. § 284 involves the
> fact-finder determining that the infringer engaged in culpable conduct
> and the court exercising its discretion to determine whether and to
> what extent to enhance the damages. *Jurgens v. CBK, Ltd.*, 80 F.3d
> 1566, 1570, 38 USPQ2d 1397, 1399 (Fed. Cir. 1996). The jury's
> finding of willfulness satisfies the first step, *see id.*, and is also one of
> the factors the court assesses in performing the second step, *see Read
> Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992).  However,
> there are other factors relevant to the second step. *See id.* (listing as
> factors: (1) deliberate copying; (2) infringer's investigation and
> good-faith belief of invalidity or non-infringement; (3) litigation
> conduct; (4) infringer's size and financial condition; (5) closeness of
> the case; (6) duration of the misconduct; (7) remedial action by the
> infringer; (8) infringer's motivation for harm; and (9) concealment).

In examining these factors, there is evidence, as discussed above, of deliberate copying and

evidence indicating that Defendants did not fully investigate whether their product infringed the

patent and have a good faith belief in invalidity and non-infringement.  Furthermore, it is undisputed

that after Plaintiffs confronted Champion about their filter and even after initiating this suit, they

continued to manufacture and sell the product.  Additionally, Defendants did have a motivation for

harm as Champion and Parker are fierce competitors, who were both vying for GM's business.

However, the court recognizes that while evidence was presented to the jury that supported

their willful infringement claim, it remains a close call as Defendants also presented evidence

tending to indicate that infringement was not willful.[4]  The court also disagrees with Plaintiffs that

---

[4]      In support of their post-trial Motions, Defendants submitted the affidavits of
several individuals associated with Champion.  Plaintiffs request that the court
strike these affidavits and maintain that the court is limited to the trial record and
should not consider these statements, particularly because at least one of the

- 28 -

Defendants engaged in inappropriate litigation conduct or that they continued to infringe long after the jury's decision.  Defendants represent that they stopped manufacturing and shipping their filter the next business day after the jury's verdict.

In weighing these factors, the court concludes that Plaintiffs are entitled to enhanced damages, although not to the extent they request.  The court concludes that because not all factors weigh in favor of enhanced damages, that the award be limited to one and a half times the jury's award, for a total amount of $9,803,409.

## IV.  PLAINTIFFS' MOTION TO DECLARE THIS AN EXCEPTIONAL CASE AND TO AWARD ATTORNEY FEES AND EXPENSES

Pursuant to 35 U.S.C. § 285, a court "in exceptional cases may award reasonable attorney fees to the prevailing party."  In determining whether a case is exceptional, courts look at "willful infringement, bad faith, litigation misconduct and unprofessional behavior." *Engineered Prods. Co. v. Donaldson*, 147 F. App'x 979, 992 (Fed. Cir. 2005).  The Federal Circuit has concluded that "[w]hile a finding of willful infringement does not mandate that damages be increased or that attorneys fees be awarded, after an express finding of willful infringement, a trial court should provide reasons for not increasing a damages award or for not finding a case exceptional for the purpose of awarding attorneys fees." *Wedgetail, Ltd. v. Huddleston Deluxe, Inc.*, 576 F.3d 1302, 1305 (Fed. Cir. 2009) (quoting *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 972 (Fed. Cir. 2000)). As the court discussed above, the jury was not unreasonable in its finding of willful infringement.  While the court disagrees with Plaintiffs' contention that Defendants engaged

_____

affiants did not testify at trial.  Defendants, however, respond that the affidavits were submitted to rebut Plaintiffs' arguments in their post-trial Motions and that certain affidavits are confined to issues not presented at trial.  The court grants in part and denies in part Plaintiffs' Motion and will limit its consideration of these affidavits to the extent that they support issues outside of the scope of trial.

in inappropriate litigation conduct, the court nonetheless finds that the jury's finding of willful infringement warrants an award of attorneys fees and expenses in this case.  Per the court's previous order, Plaintiffs shall file their fee bill with the court within 14 days of this Order.  (ECF No. 241)

## V.  PLAINTIFFS' MOTION FOR ACCOUNTING, SUPPLEMENTAL DAMAGES, AND PREJUDGMENT INTEREST

Plaintiffs request that the court order Defendants to do as follows: (1) account for the sale of its infringing filters sold after October 31, 2009, including any supplemental damages for these products; (2) calculate prejudgment interest on the jury's damage award and filters sold after October 31, 2009; and (3) calculate prejudgment interest on their attorney fees, if granted by the court.  Champion has no objection to the first two requests, but argues that prejudgment interest on attorney fees is unwarranted. Both parties rely on *Mathis v. Spears*, 857 F.2d 749, 761 (Fed. Cir. 1988), in support of their arguments regarding prejudgment interest on attorneys fees.  In *Mathis*, the Federal Circuit upheld an award of prejudgment interest on attorneys' fees, noting that it is in the district court's discretion to award such interest in cases involving "bad faith or other exceptional circumstances."  *Id.* While the court concludes that attorneys fees are warranted, the court declines to award prejudgment interest on these fees as the court fails to find that the circumstances in this case merit this additional sanction.  Accordingly, the court grants in part and denies in part this Motion.

## VI.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part Plaintiffs' Motion for Enhanced Damages for Defendants' Willful Infringement (ECF No. 198, 1:07CV1374; 185, 1:07CV1375), Plaintiffs' Motion for Accounting, Supplemental Damages, and Prejudgment Interest (ECF No. 200, 1:07CV1374; 187, 1:07CV1375), and Plaintiffs' Motion to Strike and Disregard New

Declarations as Outside the Record Evidence and Submitted for Improper Purposes (ECF No. 224, 1:07CV1374; 211, 1:07CV1375). The court grants Plaintiffs' Motion to Declare this an Exceptional Case and to Award Attorney Fees and Expenses (ECF No. 202, 1:07CV1374; 189, 1:07CV1375) and denies Defendants' Motions Pursuant to Rule 50 for Judgment as a Matter of Law, and Alternatively, Pursuant to Rule 59 for a New Trial (ECF No. 237, 1:07CV1374; 222, 1:07CV1375). The court also grants Defendants' Motion for Leave to File Oversize Memorandum in Support of Motion for Judgment as a Matter of Law Pursuant to Rule 50 or for New Trial Pursuant to Rule 59 (ECF No. 238, 1:07CV1374; 223, 1:07CV1375) and Defendants' Motion for Leave to File *Instanter* a Sur-Reply in Further Opposition to Plaintiffs' Post-Trial Motions (ECF No. 228, 1:07CV1374; 215, 1:07CV1375).

       IT IS SO ORDERED.

                      /s/ SOLOMON OLIVER, JR.
                      CHIEF JUDGE
                      UNITED STATES DISTRICT COURT

March 17, 2011